**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
DAVID C.,

                      Plaintiff,                    22-CV-8556 (OTW)

       -against-                      **OPINION & ORDER**

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

-----------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

On March 7, 2019, Plaintiff David C.[1] ("Plaintiff") applied for Title XVI Supplemental Security Income ("SSI") Benefits. (ECF 21 at 2). Plaintiff filed this action pursuant to Section 205(g) of the Social Security Act ("SSA") against the acting Commissioner of the Social Security Administration, seeking review of the Commissioner's denial of Plaintiff's application for SSI benefits. (ECF 21 at 2). The parties consented to magistrate judge jurisdiction (ECF 12), and submitted a joint stipulation in lieu of motions for judgment on the pleadings. (ECF 21). For the following reasons, Plaintiff's motion is **GRANTED** and Defendant's motion is **DENIED**.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

I. **BACKGROUND**

   A. <u>**Administrative Proceedings**</u>

Plaintiff filed his application on March 7, 2019, for a period of disability and SSI benefits, and his claim was initially denied on May 16, 2019. (ECF 21 at 2). On July 11, 2019, that denial was affirmed after Plaintiff moved for reconsideration. *Id*. On July 15, 2021, Administrative Law Judge ("ALJ") Brian G. Kanner denied Plaintiff's claims, and on August 23, 2022, the Appeals Council denied Plaintiff's request for appeal. *Id*. Plaintiff filed the instant complaint on October 7, 2022, pursuant to 42 U.S.C. § 405(g). (ECF 1).

   B. <u>**The ALJ's Decision**</u>[2]

The ALJ found that Plaintiff had severe impairments including depression, anxiety, degenerative disc disease, and substance abuse, but that his impairments did not meet or medically equal the severity of any of Listings 1.15, 1.16, 12.04 or 12.06. (ECF 14 at 32–35). Specifically with Listings 12.04 and 12.06, the ALJ found that Plaintiff did not satisfy either the Paragraph B or C criteria, finding only "moderate" limitations in all criteria. *Id*. The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, limited to simple, routine, 1-2 step instructions, with occasional interaction with co-workers, supervisors, and the public. *Id*. at 35–42. After reviewing the vocational expert's ("VE") responses to interrogatories, the ALJ found that Plaintiff could continue his past work as a commercial cleaner, and could also work as a routine clerk, maid, and "power screwdriver operator." *Id*. at 42–43.

---

[2] The administrative record is filed at ECF 14 and subparts. Where an ECF number is cited, a page reference will be to the ECF page number.

C. <u>Procedural History</u>

Plaintiff commenced this action by filing a complaint on October 7, 2022. (ECF 1). The parties consented to magistrate judge jurisdiction on October 26, 2022. (ECF 12). On January 23, 2023, the administrative record was filed (ECF 14), and the parties filed the joint stipulation in lieu of motions for judgment on the pleadings on October 5, 2023. (ECF 21).

II. **APPLICABLE LAW**

A. <u>Standard of Review</u>

A motion for judgment on the pleadings should be granted if the pleadings make clear that the moving party is entitled to judgment as a matter of law. Additionally, the Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied. Substantial evidence is more than a mere scintilla. It only requires the existence of "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," even if there exists contrary evidence. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (same). This is a "very deferential standard of review." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). The Court may not determine *de novo* whether Plaintiff is disabled but must rely on the underlying record.

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further

development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.  **Weighing Medical Opinions**

For claims such as this one, filed on or after March 17, 2017, ALJs apply the new regulations in 20 C.F.R. §§ 404.1520c and 416.920c in lieu of applying the treating physician rule. *See Acosta Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682 (AJN) (KHP), at *9 (collecting cases). Under the new regulations, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a). Instead, ALJs "will articulate in [their] determination or decision how persuasive [they] find all of the medical opinions." *Id*. at § 416.920c(b). ALJs must consider all medical opinions and determine their respective persuasiveness considering: supportability; consistency; relationship of the medical source to the claimant; specialization; and "other factors." *Id*. at §404.1520c(c)(1)–(5).

The supportability and consistency factors are the "most important." *Id*. at § 416.920c(a). Accordingly, the regulations mandate that ALJs "will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions." *Id*. at § 416.920c(b)(2); *see also Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (remanding so that the ALJ may "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and the consistency of the consulting examiners' opinions"); *Vellone v. Saul*, No. 20-CV-261 (RA) (KHP), 2021 WL 319354, at *6

4

(S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("[I]n cases where the new regulations apply, an ALJ *must* explain his/her approach with respect to the first two factors when considering a medical opinion[.]") (emphasis in original). "Supportability" is "the objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to how the medical source's opinions compare with "evidence from other medical sources and nonmedical sources in the claim." *Id*. at 404.1520c(c)(2). Although ALJs are only required to articulate their consideration of those two factors, ALJs must consider all five factors when determining a medical opinion's persuasiveness. *Id*. at § 416.920c(c).

C. **Five-Step Evaluation Process**

To be awarded disability benefits, the SSA requires that one have the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ makes this determination through a five-step evaluation process, for which the burden rests on the Plaintiff for the first four steps. Only after all four steps are satisfied does the burden then shift to the Commissioner for the final step: First, the ALJ must determine that Plaintiff is not currently engaged in substantial gainful activity. Second, the ALJ must find that Plaintiff's impairment is so severe that it limits their ability to perform basic work activities. Third, the ALJ must evaluate whether Plaintiff's impairment falls under one of the impairment listings in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 such that they may be presumed to be disabled. Absent that, the ALJ must then

5

determine the Plaintiff's RFC, or their ability to perform physical and mental work activities on a sustained basis. Fourth, the ALJ then evaluates if Plaintiff's RFC allows him to meet the physical and mental demands of his prior employment. If Plaintiff has satisfied all four of these steps, the burden then shifts to the Commissioner to prove that based on Plaintiff's RFC, age, education, and past work experience, that Plaintiff is capable of performing some other work that exists in the national economy.

*Id*. at § 416.920(a)(4)(i)–(v).

### III. ANALYSIS OF THE ALJ'S DECISION

Plaintiff raises four main arguments in support of their request for reversal of the ALJ's decision: (1) the ALJ failed to properly weigh the evidence, both by cherry-picking and failing to articulate supportability and consistency of medical opinions; (2) the ALJ did not provide a Paragraph "C" analysis consistent with the record; (3) there was not substantial evidence to support the RFC; and (4) the VE's opinion was not based on substantial evidence.

#### A. Weight of Evidence

Plaintiff asserts that the ALJ "cherry-picked" from the medical evidence and also failed to articulate how they considered the medical opinions and how persuasive they are, with specific explanations as to supportability and consistency. I agree.

As just one example, the ALJ noted when considering Plaintiff's RFC that Plaintiff may have only been partially or occasionally compliant with his medications, and expressed, "[t]he fact that the claimant has not been compliant with medications does not enhance his claim for total disability." (ECF 14 at 37). While ALJ Kanner did not use

6

noncompliance to find that Plaintiff did not meet Listings 1.15, 1.16, 12.04 and 12.06, and Paragraphs B and C, (compare *Abel J. v. Commissioner*, No. 22-CV-6311 at ECF 19 (remanding for misapplication of doctrine of noncompliance, among other reasons)), he listed multiple recreational and daily activities that Plaintiff had engaged in while ignoring multiple references in the record to manifestations of Plaintiff's depression and anxiety, including, *inter alia*, suicidal ideations; anxiety around interacting with others, including male therapists and doctors; avoiding being outside/leaving home; anger issues around interacting with men, including fear of becoming violent; paranoid thoughts and panic attacks, and difficulty socializing with anyone except his adult children.[3] (*See* ECF 21 at 3–10 (listing medical providers' notations of Plaintiff's psychological ailments over a period of several years)). Plaintiff also points out that the ALJ cherry-picked from their own consultative experts, Dr. Kahn and Dr. Kerenyi. *Id*. at 24.

      In addition to cherry-picking, the ALJ did not note the supportability and consistency of the opinions he found persuasive, the majority of which were consultative experts, and why he found unpersuasive various medical opinions that noted, for example, that Plaintiff rarely, if ever, interacted with any adults other than his children, and felt paranoia and anger around male adults. *See, e.g.*, *id*. at 5, 7, 25, 26. There is no mention, for example, of Licensed Master Social Worker Frida Laban's reports, which paint a different picture. *Id*. at 5–8.

---

[3] Mystifyingly, the ALJ referred to Plaintiff's ability to "take[] care of the kids" to support a finding that Plaintiff only has a moderate limitation in adapting or managing himself. (ECF 14 at 34). Plaintiff's children are adults. (ECF 21 at 24).

7

B. **Paragraph C Analysis**

The ALJ stated that Plaintiff did not meet the Paragraph "C" criteria. (ECF 14 at 34). This analysis was based on the immediately preceding section which found – using cherry-picked evidence — that Plaintiff did not meet the Paragraph B criteria, and which apparently relied on the same descriptions of Plaintiff's ability to care for himself at home to find that Plaintiff also did not meet the Paragraph C criteria.

C. **Because it was based on cherry-picked evidence, there was not substantial evidence to support the RFC and VE opinion.**

As another example, the ALJ noted that Plaintiff was able to complete many activities of daily living at home, such as attending to personal care, preparing simple meals, making change, and interacting with his adult children. But these activities, done largely at home, are not an indicator of ability to hold down a full-time job. *See, e.g.*, *Diana C. v. Comm'r of Soc. Sec.*, 19-CV-7474 (LGS) (GRJ), 2022 WL 1912397, at *6–9 (S.D.N.Y. Apr. 11, 2022). As mentioned above, the ALJ examined in detail the examinations and reports of the providers retained on behalf of the Commissioner, but did not discuss or explain why the reports of treating professionals were unpersuasive. With these omissions, it cannot be said that the RFC evaluation, even if it considered the VE opinion, was supported by substantial evidence. It is not evident at all from the ALJ opinion whether and how often Plaintiff left his home, or whether his paranoia, anxiety, and anger would cause him to miss work at a frequency that would not allow him to hold down a job full-time. It does not mean that he could not — but this issue appears to have been unexplored at steps 4 and 5 of the analysis.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, and the Commissioner's Motion for Judgment on the Pleadings is **DENIED**. This case is **REMANDED** for further proceedings consistent with this Opinion and Order. The Clerk is respectfully directed to enter final judgment consistent with this decision and close the file.

**SO ORDERED.**

Dated: March 26, 2024
New York, New York

*/s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge